## Rodman *et al. versus* Thalheimer.

1. Insolvency of a vendee of goods and his knowledge of it are not alone such fraud as will set aside a sale and enable the vendor to rescind and replevy the goods after they have come fairly and fully into the possession of the vendee.

2. To avoid the sale there must be artifice, trick or false pretence as a means of obtaining possession, bad faith and intent at the time to defraud the vendor.

3. Insolvency and a knowledge of it at the time of the sale are evidence for the jury with other facts of intended fraud.

4. The doctrine in New York on the question of rescission on the ground of insolvency does not obtain in Pennsylvania.

5. Evidence in this case not sufficient to go to the jury on the ground of fraud in the vendee.

[Rodman v. Thalheimer.]

February 5th 1874.  Before AGNEW, C. J., MERCUR and GOR-
DON, JJ.  SHARSWOOD, J., at Nisi Prius.

Error to the District Court of *Philadelphia* : No. 370, to Janu-
ary Term 1872.

This was an action of replevin in which the writ was issued
February 10th 1870 by Charles W. Rodman and Leonard F. Hep-
burn, trading as Rodman & Hepburn, against Max Thalheimer,
for 50,000 feet of cedar boards.   On the execution of the writ the
defendant gave a claim property bond and the goods were delivered
to him ; he pleaded " property."

The plaintiffs had sold and delivered to the defendant a large
quantity of boards ; the plaintiffs alleging that the defendant bought
them fraudulently, knowing that he was insolvent, issued this re-
plevin for them.

The case was tried, January 30th 1872, before Lynd, J.

J. J. Daly testified that he was a salesman for the plaintiffs, who
resided in New York ; about the 18th of January he was in Philadel-
phia soliciting orders for the plaintiffs for the sale of Spanish cedar
to make cigar-boxes.  He visited defendant.  "I asked him how trade
was ; he replied that trade was good ; he was making a good many
boxes and selling a good deal of cedar ; that he was making money,
and that he was making cigar-boxes and cedar chests.   I told him
what cedar I had for sale, and offered it to him at a certain price ;
he offered me two prices for the two different kinds of wood I had,
which prices I was not at liberty to accept, because they were less
than the price I was directed by my employers to ask, and less
than the price I was directed to accept without communicating
with them.   I did communicate the defendant's offer to my em-
ployers, by telegraph, that day, asking if they would sell cedar at
five and a half cents ; they answered ' Yes.'   I waited on the de-
fendant again and told him he might have the cedar at his price.
After failing in my efforts to get a better price from him, I accepted
his offer on behalf of my employers on the day following his offer ;
Thalheimer gave me instructions to have the goods forwarded by
the Camden & Amboy Railroad Co., or cheaper route, if possible ;
the terms of payment were to be the defendant's notes at sixty and
ninety days ; I reported by letter the terms of the sale to New York
and the manner of sending the goods here as directed.

" I left Philadelphia and was absent four or five days ; on my
return to Philadelphia on my way to New York, I again waited on
Mr. Thalheimer, and he complained to me of the quality of the
wood sent to him, which was then in his hands ; I agreed to allow
him forty-five dollars for any defects in the wood, and took his
notes and gave him a receipt for them ; the receipt was :

" ' Received from M. Thalheimer, one note at sixty days for

$1236.03, due 25th March, and one note for $1235, due 24th April, on account bill 24th January 1870.

'RODMAN & HEPBURN.

'Philadelphia, Feb. 1st 1870.'

"I came on to Philadelphia again, on the night of the 5th of February, and I went to Thalheimer's store the next day; I asked him then, if he had a note due this month to Peter M. Dingee; he said he had; I asked him 'was it paid?' he replied, 'who told you that?' and seemed astonished that I should have heard it; I asked him, had Dingee other notes of his; he said he had; I asked him then how much did he owe Dingee altogether; and he replied, about as much as he owed us; he said in answer to my question, that he owed about $5000 in the aggregate; I asked him what were his assets, and he replied 'about $1500,' of which $300 or $400 were bad, however; I asked him now long he had been in business; he said thirteen years; I told him it was a poor exhibit for a man in business so long; he then said he had pulled through before and he hoped to pull through again; I asked him if he had any property, and he said he had a house, but it was mortgaged for all it was worth; he said he could not get any money in, and had hardly enough to pay his hands on Saturday night. I then telegraphed the result of my interview to my employers. While at the defendant's store, I went up stairs to see what stock he had; I saw two or three (not more than three) cedar chests, and some cedar which he was working; I don't think he had more than $400 or $500 of property in the place; I saw our cedar in a cellar opposite his store; as I said, I telegraphed 'situation doubtful, come and see;' Mr. Rodman came on and saw Mr. Thalheimer the following morning; in my presence, he told Mr. Rodman that he had not a dollar in the world and that his house was mortgaged for all it was worth; he said he had ten children, each worth $10,000; Mr. Rodman then asked him to secure him in some way or another; Thalheimer said 'No;' Rodman then offered to give Thalheimer the cedar in such quantities as he might need, the whole to remain on storage —all to remain where it was till all was consumed; Thalheimer refused the offer; Rodman then offered Thalheimer $200 to let up the contract; Thalheimer refused and then said, 'I won't do anything without consulting P. M. Dingee, of New York;' Rodman then said, 'I understand you won't do anything?' Thalheimer answered, 'No—I won't do anything.' We then left. We issued a writ of replevin and seized the goods on same day."

On cross-examination witness said: "I offered this wood to the defendant in Callowhill street, in this city. He did not buy them the first time I saw him. I invited him to come to my hotel (the Girard House), and showed him some samples of the wood there. I pressed him to buy, as I usually do. I saw the defendant at the

[Rodman *v.* Thalheimer.]

Girard House on the same day. I said that if he was unable to pay on time, his notes falling due, we might accommodate him then. I saw the wood here. It was to have been delivered here. Rodman asked Thalheimer security on his property for his debt. I had told Rodman my conversation with Thalheimer the day before. In answer to Rodman's request that Thalheimer should give him back the goods, he said that it would break his credit to do so. His store is in Callowhill Street. The lumber in dispute was stored under a produce store, opposite to his store. He had all we had sold him except 2000 feet, which he had resold."

Plaintiffs gave in evidence the following letter of Daly, written in pursuance of their answer to the telegram :

" Girard House,
Philadelphia 19, 1, 1870.

Messrs. Rodman & Hepburn :

'Dear Sirs :—I had this pleasure yesterday to which I particularly refer. Have now the felicity to advise the following sale, and though it is below my ideas, could not do better, as trade is very dull. After writing you last post, I had Thalheimer at my hotel, and he offered me $5\frac{1}{2}$c. for the 'Murchie' cedar, and hence my telegram to your Mr. C. W. R. Would you sell cedar ex. 'Murchie' at $5\frac{1}{2}$c. 'Answer.' To which, I got the reply 'Yes.' Brecht bought from P. M. D. lots 21, 27, 49 logs ex. N. Mitchell at 16c. Maule Bros., also bid for the same cargo. Brecht offered me 5c. for Cuba wood, which I respectfully declined. Address me here, and remain," &c.

" Sold M. Thalheimer, 207 Callowhill Street, Philadelphia, 30 M. ft. sawed cedar 'Ex. Murchie' at $5\frac{1}{2}$c., and 20 M. ft. sawed cedar Ex. 'Murchie,' or sur'm cedar at $4\frac{1}{2}$c. Terms, *notes at sixty and ninety days.* Ship per C. and A. R. R., or cheaper route, if possible.　　　　　　　　　　　　J. J. D."

Rodman, one of the plaintiffs, testified :—

" After receiving that order I commenced to get the cedar ready. We had to get it out of our storehouse, and I ordered it to be prepared for shipment. I knew at that time that this wood was in my storehouse, and that it had to come out of my storehouse to fill that order. I had at that time about 250,000 feet in our storehouse. I only know that the wood there came out of the 'Murchie,' and that the cargo was in that storehouse, and I remember that it was a large cargo of wood. The 50,000 feet were taken out, and were delivered to the Camden & Amboy Railroad for shipment, consigned to Thalheimer. We got a bill of lading, and it was sent to the defendant."

They gave in evidence this letter from defendant :—

[Rodman *v.* Thalheimer.]

"Philadelphia, January 28th 1870.

".Messrs. Rodman & Hepburn :

" Gents :—Having receipted that cedar yesterday, but find that I was greatly disappointed; the Spanish cedar Mr. Daly sold to me as first class and selected, when I find it not anything like represented. I had a box-maker at the freight depot to see it. He wanted to buy 20,000 feet. I had it offered to him for 5¾ cents, but he would not have it at no such price. The other stuff is so bad that I really don't know what to do with it ; it is worse than poplar, and there is many a bundle in it which I could not offer to any one at no price. Mr. Brecht said if you had sent such wood to him he would have left it at the depot, and would not received it all. Now, if you wish to make a deduction of at least 4000 feet on the 4½ cents wood, I will send you your notes with that deducted amount ; if not, I cannot accept it, as I would lose too much on it. I cannot sell unless to make allowances on that wood; and there is also a great deal of rotten and faulty wood among the Spanish cedar, which I have to make allowances, which Mr. Daly sold to me as sound.

" Please inform me as soon as possible what you intend to do, and oblige          Yours,          M. THALHEIMER."

Plaintiffs gave in evidence their check for $45, the amount allowed for the defect in the boards sent to defendant by letter February 4th 1870, and the defendant's letter of the 5th returning the check, and directing plaintiffs to deduct the amount from the notes when they fell due.

Rodman testified that he did not get the defendant's notes discounted ; plaintiffs endorsed them, and passed them in settlement of an account for wood they had bought. On learning that a note of defendant had gone to protest, he went to the persons to whom they had endorsed the notes and stopped them in their hands, and agreed to give them other notes in their place. He further testified substantially as Daly, as to their interview with defendants.

Plaintiffs gave other evidence tending to show defendant's insolvency, the delivery of the goods, &c.

The plaintiffs, assuming that the contract was made in New York, offered evidence of the laws of that state, for the purpose of showing that under the evidence in this case the title to the property had not passed from them.

The court refused the offer, on the ground that the evidence showed that the contract was made in Pennsylvania; and sealed a bill of exceptions.

The plaintiffs having closed, the court on motion of the defendant directed a nonsuit.

The plaintiffs took a writ of error ; they assigned for error the rejection of their evidence, and directing a nonsuit.

[Rodman v. Thalheimer.]

*S. D. Page* and *S. S. Hollingsworth*, for plaintiffs in error.—False representations by vendee to vendor by which he is induced to sell goods is a fraud, and gives the vendor the right to rescind: Harner v. Fisher, 8 P. F. Smith 453. The evidence here should have gone to the jury : Weeks v. Burton, 7 Vermont 67 ; Tryon v. Whitemarsh, 1 Metcalf 1 ; Upton v. Vail, 6 Johns. R. 181 ; Boyd v. Browne, 6 Barr 310 ; Bokee v. Walker, 2 Harris 140 ; Huber v. Wilson, 11 Id. 178 ; Graham v. Hollinger, 10 Wright 55 ; Heastings v. McGee, 16 P. F. Smith 386.

*W. L. Hirst*, for defendant in error.—To rescind the sale there must be artifice, intended and fitted to deceive : Smith v. Murphy, 9 Harris 367 ; Backenstoss v. Speicher, 7 Casey 324.

Judgment was entered in the Supreme Court, February 16th 1874.

PER CURIAM.—This was a sale by a " drummer " for a New York house. His whole testimony, including his letter to his employers of the 19th of February 1870, in which he expresses his " felicity," as well as his note of the sale to the defendant, shows that *he*, as the agent of the plaintiffs, made the sale of the cedar at Philadelphia, and that the defendant was induced to buy at his urgent request. It is true, he asked the defendant about trade, and the latter said it was good ; and asked him about his business, and the latter said it was good ; he was making money—making cigar-boxes and chests. But this was not said as an inducement to obtain credit, nor is there the slightest evidence of artifice or trick on part of the defendant to obtain the cedar. If the plaintiffs have suffered a loss from the credit given and the insolvency of the defendant, it can mainly be attributed to their mode of business in sending out an anxious agent to " drum up " customers in the expressive terms of trade. It is very evident Daly, the " drummer," followed up his vocation with assiduity, and without very great concern for the ability of his customer. In his own language the defendant did not buy the first time he saw him ; was invited to the Girard Hotel to see the samples, and he " *pressed* the defendant to buy," as (he said) " I usually do," and told him if he was unable to pay on time his notes falling due we might accommodate him then. We see in all these circumstances not the slightest intent on part of the defendant to obtain the goods by a fraudulent concealment of his insolvency. The law in this state is not that insolvency and the mere knowledge of it are such a fraud as to set aside the sale and enable the seller to rescind, and to replevy the goods after they have come fully and fairly into the possession of the purchaser. It requires artifice, trick or false pretence, as a means of obtaining possession, to avoid the purchase. There must be bad faith,—an intent at

[Rodman *v.* Thalheimer.]

the time to defraud the seller. Insolvency and a knowledge of it at the time of the sale are evidence to go to the jury with other facts to show the intended fraud, but standing alone will not operate to rescind after a possession fully and fairly acquired. The New York doctrine does not hold in this state. See Smith *v.* Smith, Murphy & Co., 9 Harris 367; Bunn, Raiguel & Co. *v.* Ahl, 5 Casey 387; Backenstoss *v.* Speicher, 7 Casey 325; Harner *v.* Fisher, 8 P. F. Smith 453; Williams *v.* Davis, 19 Id. 21. These considerations dispose of the exceptions to the evidence. The place of the contract was Philadelphia, as we have already stated. Daly says he accepted defendant's offer—he made the sale—he reported it and congratulated the plaintiffs upon it. The contract was not to be executed in New York. Of course the cedar came from New York by the designated route, but the delivery was not there by contract.

Judgment affirmed.