## Bughman, Trustee, Appellant, *v.* Central Bank.

*Sale—Contract—Fraud—Insolvency—Title—Evidence.*

An intention of an insolvent buyer at the time of the purchase not to pay will not amount to a fraud, unless some false representation, trick or artifice, or conduct which involves a false representation, be added. Smith v. Smith, 21 Pa. 367, criticised but reaffirmed.

The Supreme Court will not however extend this rule a step beyond what the authorities require. Any additional circumstance which tends to show trick, artifice, false representation, or conduct which reasonably involves a false representation, will take the case out of the rule.

Insolvency and knowledge of it at the time of the sale are evidence to go to the jury with other facts to show intended fraud, though they are not sufficient by themselves.

If a purchaser about the time of the delivery of the goods confesses judgment and gives a bill of sale to a creditor of substantially all his assets, and disables himself from continuing business, he commits an act of legal if not actual fraud, and acquires no title to the goods.

*Bill of sale—Antecedent debt—Payment—Burden of proof.*

The taking of a bill of sale in payment and satisfaction of a prior debt is a taking for value that shuts out the equities of the original vendor of the goods passing by the bill of sale; but in such a case if the purchase was a fraudulent one by the vendee, the burden of proof is on the creditor taking the bill of sale to show that he took it in payment of the debt.

Argued Oct. 27, 1893. Appeal, No. 179, Oct. T., 1893, by plaintiff, H. C. Bughman, trustee under will of James H. Hays, deceased, from judgment of C. P. No. 1, Allegheny Co., June T., 1891, No. 176, entering compulsory nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass to recover value of coal sold by plaintiff to Thomas Fawcett & Sons, which afterwards came into possession of defendant under bill of sale.

At the trial, before COLLIER, J., it appeared that, on Nov. 19, 1890, Thomas Fawcett & Sons sent two barges to plaintiff's works to be loaded with coal in accordance with their previous course of dealing on credit by notes running for four months. On the same day Fawcett & Sons confessed judgment for $160,157 to defendant, and Nov. 21, 1890, executed and delivered to defendant a bill of sale covering practically all their coal boats, and including the two barges with the coal contained therein purchased from plaintiff. The evidence tended to show that the bill of sale was signed and delivered in the forenoon of Nov. 21st, at which time only one of the barges was loaded, and that the other was not loaded until the afternoon of that day. The coal was sent to New Orleans, where it was sold by defendant.

It also appeared that Fawcett & Sons ceased their business in November, 1890, after the bill of sale was given, and they never resumed it, and have been insolvent ever since.

The court entered a compulsory nonsuit which it refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Thomas C. Lazear, Charles P. Orr* with him, for appellant. —If a purchaser at the time of making a new purchase is not only insolvent and knowing himself to be so, but has performed an open and notorious act of insolvency by breaking up his business and assigning his property, it is his duty to communicate that fact to the vendors, and the omission of that duty amounts to a fraud: Mitchell v. Worden, 20 Barb. 253; Mackinley v. McGregor, 3 Whart. 367; Donaldson v. Farwell, 93 U. S. 631; Krumbhaar v. Birch, 83 Pa. 426; Croyle v. Moses, 90 Pa. 250; Harner v. Fisher, 58 Pa. 453.

A fraudulent purchase of goods gives no title to the fraudulent purchaser, nor does his transfer of the goods by assignment, to a bona fide creditor of his in payment of a pre-existing indebtedness, vest the title in such creditor: Root v. French, 13 Wend. 570; Irwin v. Singer, 2 Yeates, 266.

The holder of a note for a pre-existing debt is not a holder for value: Kirkpatrick v. Muirhead, 16 Pa. 117; Bronson v. Silverman, 77 Pa. 94; Royer v. Keystone Bank, 83 Pa. 248.

*J. S. Ferguson, J. H. White* and *E. G. Ferguson* with him, for appellee.—Insolvency of a vendee of goods and his knowledge of it are not alone such fraud as will set aside a sale and enable the vendor to rescind and replevy the goods after they have come fairly and fully into the possession of the vendee: Smith v. Smith, Murphy & Co., 21 Pa. 367; Rodman v. Thalheimer, 75 Pa. 232; Backintoss v. Speicher, 31 Pa. 324.

The taking of security, not as collateral for but as payment of an antecedent debt, will constitute the assignee a holder for value so as to give him the rights of a bona fide purchaser: Dovey's Ap., 97 Pa. 153; Shufeldt v. Pease, 16 Wis. 689.

OPINION BY MR. JUSTICE MITCHELL, December 30, 1893:

Buyer and seller under ordinary circumstances deal at arm's length. On one hand the rule is caveat emptor, while on the other, the buyer is not bound to disclose his pecuniary condition or his ability to pay. A man has a right to take chances, and to be sanguine as to his affairs, hence the law of most commercial states holds that even insolvency, although known to the buyer at the time of the purchase, need not be disclosed, and the concealment of it, by mere silence, without any active misrepresentation, is not such fraud as will avoid the sale.

In this state the cases have gone farther. In Smith v. Smith, 21 Pa. 367, it was held that even an intention by an insolvent buyer at the time of the purchase not to pay, will not amount to a fraud, unless some false representation, trick, or artifice, or conduct which involves a false representation, be added. The law as thus declared was not in harmony with that of a majority of other states, nor with sound policy or the principles of business honesty. It was moreover a departure from the previous decision of this court in Mackinley v. McGregor, 3 Whart. 369, where it was expressly held (p. 396) that whatever may be the limitation of the right of the vendor as against other persons into whose hands the goods may have come, " it is certain as a general principle that when a person purchases goods with a preconceived design of not paying for them, it is

a fraud, and the property in the goods does not pass to the vendee." This seems to us much the sounder doctrine. While as already said, a man has a right to take chances and to be even sanguine in so doing, yet they ought to be reasonably fair business chances, and the hopefulness permitted by good faith. A purchase with a present intent not to pay is a rank fraud in morals, and should be so pronounced in law. The departure that was made in Smith v. Smith is therefore much to be regretted. It was not made by a unanimous court, nor has it ever received the unmixed approbation of the bench or the bar. But it has been expressly followed in several cases, and has remained in the books without being overruled, for forty years, and recognizing that the subject is one on which legal minds have always been apt to differ, we do not think it wise now, notwithstanding our own clear convictions on the principle, to unsettle the law by another change. We will therefore stand on the authority of Smith v. Smith and its kindred cases, but we will not go a step beyond what they require. Any additional circumstance which tends to show trick, artifice, false representation, or, in the language of Smith v. Smith itself, "conduct which reasonably involves a false representation," will be sufficient to take the case out of the rule of those authorities.

In so declaring we are in fact only putting into express words what has been the practical application of the rule by this court heretofore. Thus even in Rodman v. Thalheimer, 75 Pa. 232, one of the two cases chiefly relied on by appellee, it is said Per Curiam "there must be bad faith—an intent at the time to defraud the seller. Insolvency and the knowledge of it at the time of the sale are *evidence to go to the jury with other facts to show the intended fraud,*" though they are not sufficient by themselves. How little additional is required to make them sufficient is illustrated in Harner v. Fisher, 58 Pa. 453, where it was held that a creditor employing an agent to buy a horse from the debtor as if for himself, but with the prearranged scheme to pay for it with the creditor's claim, was such a fraud as prevented the passing of the title. The distinction in morals between getting a man's horse by a nominal purchase, with an intent to pay for it by the seller's own duebill, and getting it with intent not to pay at all, is thin,

and the advantage rather seems to be with the first method as the less dishonest of the two. But Chief Justice THOMPSON after referring to Smith v. Smith said the scheme was a poor excuse for a fraud that vitiated the whole transaction.

In the present case Fawcett & Sons at about the time if not before the delivery of the coal not only committed an act of insolvency by the confession of judgment and bill of sale to the bank, but in fact disabled themselves from continuing their business, and practically brought it to an end. This was a most material fact in the transaction. It was such a change in circumstances as the vendor was entitled to know, and it does not admit of doubt that if he had known it, he would not have delivered the coal. In the New York cases this fact makes the purchase a fraud in law, and is conclusive. Mitchell v. Worden, 20 Barb. 253. This we think is the sound and true rule. It is in accord with what we know would be the practical result in business life, and it follows the close analogy of a concealed defect in an article sold, which entitles the purchaser to rescind the sale. We hold therefore that as between the appellant and Fawcett & Sons the transaction was a legal if not an actual fraud, and passed no title to the coal.

There remains however, the question whether the appellee is in any better position than the Fawcetts. Is the bank a bona fide holder for value, in such sense as to give it a good title notwithstanding the fraud of its assignor? The New York cases hold that as against a vendor who has been defrauded, no title passes until the goods come to the hands of a bona fide holder for a new consideration, passing at the time of transfer, and that receipt of them for an antecedent debt even in payment and satisfaction, is not enough. Root v. French, 13 Wend. 570. If the question were open we should adopt this as a sound and just rule. But it is settled in Pennsylvania in regard to commercial paper that taking it in payment and satisfaction of a prior debt is a taking for value that shuts out the equities between the original parties, and in Dovey's Appeal, 97 Pa. 153, the same rule was applied to a taking of stock. For reasons already set out in reference to the other branch of the case, we do not think it wise to make a new departure now.

The evidence does not show clearly whether the bank took the bill of sale in payment or as security, or whether it had

notice before taking it that the coal had not been delivered. These questions must therefore go to the jury with the burden of proof on the bank, inasmuch as its vendors, the Fawcetts, acquired no title against the plaintiff by their fraudulent purchase.

Judgment reversed and venire de novo awarded.