### In re LEWIS.

(District Court, E. D. Pennsylvania. October 5, 1903.)

#### No. 1,567.

**1. SALES—RESCISSION BY SELLER—FALSE REPRESENTATIONS.**

It is the settled law in Pennsylvania that the insolvency of a purchaser of goods, and his knowledge of it when he made the purchase, not communicated to the seller, are not alone sufficient to invalidate the sale or to entitle the seller to rescind after delivery of the goods, but, to avoid the sale, there must have been, in addition, conduct which reasonably involves a false representation. Under such rule, a promise by the insolvent purchaser to pay cash for the goods on completion of delivery, and a breach of such promise, does not entitle the seller to rescind. Such a promise is implied in every sale, unless other terms of payment are agreed upon, and expressing it in words does not so change the transaction as to render it fraudulent.

In Bankruptcy. On certificate of referee upon petition of William S. Driver.

Robert J. Byron, for trustee.
Isaac D. Yocum, for creditor.

J. B. McPHERSON, District Judge. Whatever may be the rule in other jurisdictions, it has for 50 years been settled law in Pennsylvania that "the intention of the buyer of goods, at the time of purchasing them, not to pay, together with his insolvency at the time, and his knowledge of it, not communicated to the seller, will not avoid the sale after the delivery of the property sold. To avoid the sale, there must be artifice intended and fitted to deceive, practiced upon the vendor in procuring the property." This was decided in Smith v. Smith, 21 Pa. 367, and, while the ruling was criticised and regretted in Bughman v. Bank, 159 Pa. 94, 28 Atl. 209, it was expressly followed, on the ground that it would not be wise to unsettle the law by another change. The court said:

"We will therefore stand on the authority of Smith v. Smith and its kindred cases, but we will not go a step beyond what they require. Any additional circumstance, which tends to show trick, artifice, false representation, or, in the language of Smith v. Smith itself, 'conduct which reasonably involves a false representation,' will be sufficient to take the case out of the rule of these authorities."

And in the somewhat later case of Cincinnati Cooperage Co. v. Gaul, 170 Pa. 545, 32 Atl. 1093, the court pronounced as follows:

"It is well settled in Pennsylvania that the insolvency of the purchaser, and his knowledge of it when he made the purchase, are not alone sufficient to invalidate the sale, or to support an action by the seller in rescission of it. But they are evidence to go to the jury, with other facts, to show the intended fraud. Rodman v. Thalheimer, 75 Pa. 232. It is essential to the impeachment of the sale as fraudulent, that there should be artifice, trick, and false pretense intended and fitted to deceive the vendor, and operative in obtaining from him possession of his property (citing cases). But the insolvency of the purchaser, and his knowledge of it, coupled with a representation of solvency, which induced the seller to part with the possession of his property, will have that effect, and enable the latter to recover possession of it by a suit in rescission of the sale."

See, also, Diller v. Nelson, 10 Pa. Super. Ct. 449.

This being the law of Pennsylvania, the remaining inquiry is whether any additional circumstance, of the character above described, appears in the present case. The facts are, briefly, these: The bankrupt, who was certainly insolvent at the time when he purchased the petitioner's goods, and as certainly had knowledge of it, promised to pay cash upon completion of the order; that is, upon delivery of all the goods that he was buying. There was no representation of solvency, and, indeed, no representation of any kind; merely the promise to pay cash on completion of the order. The petitioner stopped delivering the goods before the order was completed, and it is argued that the default of the bankrupt has not been shown, for the time of payment under the contract has not yet arrived. But, even if the argument is valid, I prefer not to put the decision upon that ground. It should rather rest, I think, upon the proposition that a promise by an insolvent man to pay cash upon delivery of goods does not make the rule of Smith v. Smith inapplicable, and the breach of the promise

does not entitle the seller to rescind the contract and recover the goods. Such a promise is made no stronger by being expressed. It is implied in every sale, unless different terms of payment are agreed upon; and, therefore, merely to speak aloud or to write the same words that the law would otherwise make part of the contract cannot, as it seems to me, so change the transaction as to make it fraudulent. It is conceded that, if the promise had not been spoken, the purchase would have been within the rule of Smith v. Smith, and, in my opinion, speaking the promise did not change its character. It remained a promise, and did not become a false representation, such as is referred to in Bughman v. Bank. Even an insolvent man might, under some circumstances, reasonably expect to be able to fulfill such a promise when the time should arrive, and it would be very difficult in any case where the promise might be made to pronounce with confidence that the words amounted to "trick, artifice, false representation, or conduct which reasonably involved a false representation."

The decision of the referee is affirmed.