HILL VENEER CO. v. MONROE.

(Circuit Court, M. D. Pennsylvania. August 7, 1911.)

No. 106.

1. SALES (§ 45*)—RESCISSION BY SELLER—GROUNDS.

Where a seller sold and shipped at different times eight car loads of veneer to a furniture company on credit, having been informed by the company before any sale that it was continuing its business only by virtue of an extension of time by its creditors, there was no such fraud or misrepresentation as entitled the seller to rescind the sale and reclaim the last car load, which was the only one unpaid for, on the appointment of a receiver for the purchaser.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 94; Dec. Dig. § 45.*]

2. SALES (§ 161*)—DELIVERY TO COMMON CARRIER.

The unconditional delivery by a seller of goods to a common carrier. to be transported and delivered to the purchaser, to whom the bill of lading was sent, constituted a delivery to the purchaser, which passed the title, even though the purchaser had not accepted the goods at the time a receiver in insolvency was appointed for it, who received them in its behalf.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 377–380; Dec. Dig. § 161.*]

3. Sales (§ 1*)—Definition.

A "sale" is the transfer of the property in goods to another for an agreed price, and generally the title or property in the thing transferred passes to the purchaser as soon as delivery is made according to the terms of the contract. It is not necessary that the price agreed upon be paid to constitute a sale; but credit may be extended for the agreed price, and the title will pass as fully and effectually as if the consideration had been paid before the delivery, if delivery is actually consummated, unless a different intention is manifested by agreement or otherwise.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 7, pp. 6291–6306; vol. 8, p. 7793.]

In Equity. On petition by the Hill Veneer Company against W. R. Monroe, receiver of the Hawley Slate Furniture Company, to reclaim property. Petition denied.

Wm. Chrisman and Neil Chrisman, for petitioner.
A. W. Duy, for respondent.

WITMER, District Judge. The Hill Veneer Company, a corporation doing business at High Points, in the state of North Carolina, seeks to reclaim certain property delivered to the insolvent, the Hawley Slate Furniture Company, engaged in the manufacture of furniture at Bloomsburg, Pa., consisting of a car load of veneer.

[1] It appears that during the year eight car loads of drawer bottoms had been shipped by the veneer company to the furniture company. The proper credit was entered on each invoice, and all were paid but the last or eighth car. Before any credit was extended, the veneer company caused inquiry to be made concerning the financial standing of the furniture company, resulting in an unfavorable report. The furniture company furthermore reported, frankly admitting, amongst other things, that it was working under an extension of time granted by its creditors, and offering as reference a person alleged to be its largest creditor, having no interest in the concern other than as a creditor. The veneer company also obtained a similar report from its authorized agent, who sold the furniture company the first order of lumber after his investigation.

The information to hand was sufficient to aid any discreet business man to a proper conclusion. If not, it was at least sufficient to have put the veneer company upon further inquiry, if anything additional was needed, which could have been readily ascertained by following the direction of the furniture company's letter. There is no allegation that any false representations were made by the furniture company in this or any other letter written by it. Neither is it charged that it in any wise misrepresented its true financial status. This the veneer company, no doubt, well understood at the time it opened its account and took chances; and it is not now sufficient, after having to a large extent succeeded, for it to say that the insolvent should have continued to keep it informed of its financial doings. Such information could have been ascertained, no doubt, upon proper inquiry, had the veneer company been diligent as bound under the circumstances.

At the time the first credit was extended, the veneer company was aware of the fact that the furniture company was doing business by virtue of an extension offered by its creditors, and that, if a renewal of such extension should be refused, the business could not be continued; but it chose to extend its credit, and therefore assumed the risk of loss, and is now in no better position than the other creditors.

"Buyer and seller under ordinary circumstances deal at arm's length. On one hand, the rule is caveat emptor; while, on the other, the buyer is not bound to disclose his pecuniary condition or his ability to pay. A man has a right to take chances, and to be sanguine as to his affairs; hence the law of most commercial states holds that even insolvency, although known to the buyer at the time of the purchase, need not be disclosed, and the concealment of it, by mere silence, without any active misrepresentation, is not such fraud as will avoid the sale."

"To constitute legal or constructive fraud, such as to entitle the vendor to rescind the contract of sale and reclaim the goods, there must be something more than the mere insolvency of the vendee and the knowledge upon the part of the vendee that he is insolvent. There must be a withholding of that knowledge from his vendor, and a resort to trick, artifice, false representation, or such conduct as reasonably involves a false representation." Smith v. Smith, 21 Pa. 367, 60 Am. Dec. 51; Bughman v. Central Bank, 159 Pa. 94, 28 Atl. 209; Smelting Co. v. Temple, 12 Pa. Super. Ct. 99.

In the absence of circumstances which tend to show trick, artifice, false representation, or, in the language of Smith v. Smith itself, "conduct which reasonably involves a false representation," there has not been sufficient shown to take the case out of the rule of the authorities cited.

[2] But it is argued that even if there was no fraud or deception, which might have induced the shipment, the title of the property had not passed, either to the insolvent or its receiver, and that the petitioner is now only seeking to recover its own property. The order was given November 26, 1910, and delivered into the hands of the common carrier, in North Carolina, December 31, 1910, and the bill of lading at once forwarded to the purchaser. The lumber arrived at Bloomsburg, Pa., on or about January 13, 1911, but was not accepted by the consignee, in order that the consignor might be enabled to "receive the full amount on invoice." The receiver, however, appointed January 19, 1911, paid the freight, and accepted the goods, and appraised it as part of the assets of the estate.

[3] A sale is the transfer of the property in goods to another for an agreed price, and generally the title or property in the thing transferred passes to the purchaser as soon as delivery is made according to the terms of the contract. It is not necessary that the price agreed upon be paid to constitute a sale; but credit may be extended for the agreed price, and the title will pass as fully and effectually as if the consideration had been paid before the delivery, if delivery is actually consummated, unless a different intention is manifested by agreement or otherwise. In the present case there was no different intention or agreement, expressed or implied. The sale was unconditional. There is no doubt that the delivery to the common carrier of the property in question was a delivery to the purchaser. All the requisites of a delivery were observed, whether determined by the law of Pennsylvania or North Carolina. The conclusion is the same.

Following a long line of cases, in Phila. & C. R. Co. v. Wireman, 88 Pa. 264, it is decided that:

"Where goods are left with a common carrier, to be delivered to the consignee without any qualification or restriction, the consignor parts with the goods and all control over them."

It is held in Ober v. Smith, 78 N. C. 313, and again confirmed in Hunter v. Randolph, 128 N. C. 91, 38 S. E. 288, that:

"Where goods are left with a common carrier, to be delivered to the consignee, without any qualification or restriction, the consignor parts with the goods and all control over them, and the passage of title is not prevented by failure of the vendor to send the vendee a bill of lading."

But it is not necessary to resort to the law as laid down by the state courts for authority respecting the delivery of the lumber in dispute since it is said (In re Hess, 14 Am. Bankr. Rep. 642):

"It has been established by numerous decisions that, in finding upon a question of common law and not of statute, the United States court will not be bound by state decisions."

The Supreme Court of the United States, in an opinion delivered by Justice White in U. S. v. R. P. Andrews & Co., 207 U. S. at page 240, 28 Sup. Ct. at page 104 (52 L. Ed. 185) says:

"That as a general rule the delivery of goods to a common carrier for account of a consignee has effect as delivery to such consignee is elementary. That where a purchaser of goods directs their delivery for his account to a designated carrier, the latter becomes the agent of the purchaser, and delivery to such carrier is a legal delivery to the purchaser, is also beyond question. Certain, also, is it that, on the delivery of goods to the consignee or his order, the acceptance by the consignee of such bills of lading constitutes a delivery."

And it is not inconsistent with a proper delivery that the carrier has not been designated by the purchaser, but it is sufficient that the goods have been delivered to the carrier usually employed in the transportation of the goods from the place of the seller to that of the purchaser, as was done in the present instance.

True, the purchaser refused to receive the goods when they arrived, with the manifest intent of returning the goods to the vendor, so as to prevent any loss of the price to the consignor. This was done without any actual intent to defraud any one, but with an honest desire to protect the vendor. This action was not, however, communicated to it, and the contract could only be rescinded, altered, or revoked with its consent, no matter what action the vendee might have taken. A contract is always mutual between the parties, and one cannot in any manner revise a mutual contract without the actual or implied consent of the other. But the purchaser had a right to change its mind in this respect, at any time before communicating its intentions to the vendor. This was done by the receiver, who succeeded to all the rights of the insolvent company. Moreover, the proposed action for the return of the lumber would never have been thought of, had the creditors not refused an extension and thus postponed the receivership proceedings. It undoubtedly would have been accepted and used in conducting the insolvent's business.

Even if the refusal to receive the goods had been communicated to the consignor and been agreed to by it, the transaction would have been in fraud of creditors, and could not have been enforced. The drawer bottoms, being at that time the property of the furniture company, which was insolvent and about to fall into the hands of a receiver in pursuance to proceedings instituted in court by its certain creditors, were a part of the assets of the estate. Had the insolvent caused the return of the disputed goods to the vendor, it would have unconsciously committed a fraud by creating an unlawful preference. The petition is therefore denied.