## Penn Lumber Company, Appellant, v. Hanover Bending and Manufacturing Company.

Argued March 14, 1929.

Before TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Albert L. Moise,* and with him *John Aaron Hoober,* for appellant.—Title to the lumber was in the plaintiff: Westinghouse Air Brake Co. v. Harris, 237 Pa. 203; Henderson v. Lauck, 21 Pa. 359; Miller v. Munhall, 34 Leg. Int. 321; Refining & Storage Co. v. Miller, 7 Phila. 97.

*Robert C. Fluhrer,* for appellee.—Plaintiff did not have title, possession or right to the possession of the lumber: Popper et al. v. Rosen, 292 Pa. 122; Arctic Stores, 258 Federal 688; Edelstone v. Schimmel, 233 Mass. 45; Samuel v. Delaware Steel Co., 69 Pa. Superior Ct. 605; Fairbanks, Morse & Co. v. Flotron Co., 87 Pa. Superior Ct. 228.

OPINION BY KELLER, J., April 10, 1929:

Plaintiff brought this action of replevin for a carload of beech lumber. Defendant gave a counter-bond and retained the lumber. Plaintiff obtained a verdict for its value. The court entered judgment non obstante veredicto in favor of the defendant.

The relevant facts were in writing and may be summarized as follows: On January 31st defendant ordered a carload of 2″ beech lumber, to grade 75% No. 1 common and better, 25% No. 2 common, to be delivered at Hanover, Pa., @ $70 per thousand feet f. o. b. Hanover, Pa. Plaintiff accepted the order, on February 1st, terms, freight net cash; balance cash, less 2%, five days after arrival. Plaintiff thereupon ordered from J. F. Rumbarger, a wholesale lumber dealer, a carload of lumber, conforming to defendant's specifications, to be shipped to Hanover. Rumbarger, on or about February 5th shipped a car containing 15,982 feet of beech lumber from a West Virginia mill to Hanover, Pa., where it was unloaded by defendant and placed in its yard. On February 22d defendant notified plaintiff that in checking up the tally, it found that the car contained 3024 ft. of 'sound wormy' lumber [a recognized grade in the lumber trade, but not, it was claimed, Nos. 1 or 2 common] and 1016 ft. of No. 2 common, and asked for a reduction in price because of the large quantity of sound wormy lumber; and on February 26th, in reply to a letter of plaintiff's dated February 24th, which is not in the record, offered to pay $48 per thousand for the sound wormy lumber. Plaintiff, who had not yet paid Rumbarger for the lum-

ber, evidently got into communication with him and refused the lumber, so far as it was concerned, for Rumbarger telegraphed defendant on February 28th, that the car had been refused by Penn Lumber Company, and instructed defendant not to use the car but load at once and draw on him for the freight; and on March 1st plaintiff wrote defendant forbidding it to use any of the lumber recently shipped by Mr. Rumbarger, to a portion of which defendant had objected, and stating that the plaintiff had turned the lumber back to Mr. Rumbarger on account of defendant's objections, and agreeing to refund the freight paid and reasonable charge for unloading, as soon as a car could be placed to receive the lumber.

In the meantime, on February 26th, plaintiff had been approached by defendant's attorney, who asked for an extension of time on a note for $200 due the following week, given plaintiff in another transaction, and stated that defendant company was in bad shape and had been for some years. On March 3d plaintiff's attorney wrote defendant that its request for an extension of time showed that if it was insolvent then, it was insolvent at the time the order for the beech lumber was received and shipped; and stated that his instructions were to receive immediate payment of the claim or else replevy the lumber; giving defendant until March 5th to decide what it would do. On March 15th the writ of replevin issued. On March 5th plaintiff paid Rumbarger $650 on account of the lumber, and the balance a few days after the writ issued.

We need not decide whether the learned court below was right in its first ground for entering judgment non obstante veredicto, to wit, that at the time the writ issued the plaintiff did not have such possession or title to the car of lumber as warranted its replevying it; for we are satisfied that the second ground relied on furnished a sound basis for its action. There was no evidence in the case justifying a finding that

the defendant had rescinded the contract or refused the carload of lumber. It did nothing more than notify plaintiff that the car contained a quantity of lumber which did not conform to its order and ask for a reduction in price as to it; and suggest an adjustment satisfactory to it for the lumber not according to contract. This did not amount to a rescission of the contract nor justify the replevin of the lumber by the plaintiff. The terms of sale were not cash on delivery, hence the sale was not within the principle referred to in Frech v. Lewis, 218 Pa. 141, and title passed to defendant on delivery of the lumber. Furthermore, even when goods are sold for cash on delivery, unless delayed by trick or artifice, of which there is no evidence here present, the assertion of the right to reclaim the property must follow immediately upon the buyer's default: Frech v. Lewis, supra, p. 142. A delay of nearly a month is fatal.

Plaintiff's right to replevy the lumber was not based on any fraud, artifice or false representation of the defendant in its purchase, and none appears in the record. The declaration did not even refer to defendant's insolvency and subsequent bankruptcy, though evidence of the bankruptcy was given on the trial; but the fact that defendant was insolvent when it ordered the lumber, in the absence of any false representation, trick or artifice, would not amount to fraud sufficient to justify a rescission by the plaintiff and a retaking of the lumber: Bughman v. Central Bank, 159 Pa. 94; Rodman v. Thalheimer, 75 Pa. 232; Reed v. Felmlee, 25 Pa. Superior Ct. 37. No question relating to stoppage in transit arises in this case. Plaintiff based its right to replevy the lumber on an alleged rescission of the contract by the defendant, by its refusal to accept the lumber; but as we have seen it failed to produce evidence warranting such a finding.

There was nothing in the alleged trade custom, testified to by plaintiff's president—and corroborated to

some extent by Rumbarger—if restricted to the right of the buyer of lumber to inspect it before acceptance, that affected the relation between these parties, for the defendant did inspect it and accept it, making a claim for reduction of price as to the lumber not conforming to the contract. Such a custom would be in practical accord with section 47 of the Sales Act of 1915, P. L. 543. If attempted to be extended to a usage that the buyer could not accept lumber if his inspection disclosed a variation in count or quality, and set up the shortage or breach of warranty in diminution of the price, it was not declared on, nor proved as laid down in Albus v. Toomey, 273 Pa. 303.

Sections 44 (3), 49 and 69 (a) of the Sales Act are also relevant to the case in hand.

Furthermore, after issuing the writ of replevin, and the retention of the lumber by the defendant on its counter-bond, plaintiff proved its claim in bankruptcy against defendant's bankrupt estate for the full and exact contract price of the lumber, and received its dividend thereon. Such a claim is inconsistent with plaintiff's present contention.

The assignment of error is overruled and the judgment is affirmed.