## Metropolitan Distributors v. Eastern Supply Co.

Before Soffel, Smart and Weiss, JJ.

*Berger & Berger,* for petitioner.

*Harold R. Schmidt* and *Bernard Goodman,* for receivers.

*Rothman, Gordon & Foreman,* for defendant.

SOFFEL, J., November 6, 1959.—On April 24, 1958, Turf Man Sales Corporation filed a petition for reclamation in the above entitled case asking that a rule be issued to show cause why the receivers of Eastern Supply Company should not surrender to petitioner certain personal property. The facts as alleged in said petition may be summarized as follows:

On March 24, 1958, receivers for Eastern Supply Company were appointed by this court. Subsequent to that appointment and without notice or knowledge of it, Turf Man Sales Corporation contracted for the delivery of 150 lawnmowers to Eastern Supply Company. On March 28, 1958, the lawnmowers were accepted by Eastern Supply Company at its premises. Eastern Supply Company was then insolvent and was unable and did not intend to pay for the lawnmowers.

The insolvency was known by the company and the receivers. On April 8, 1958, Turf Man Sales made demand upon the receivers for return of the mowers claiming that title had remained in the seller throughout this course of events.

An amendment to the petition was filed April 9, 1958, which alleged these additional facts: The first demand by Turf Man Sales Corporation for return of the lawnmowers was made April 4, 1958, by telephone. This was then followed by a letter of demand dated April 8, 1958, addressed to the receivers. A second amendment to the petition, filed August 5, 1958, reiterated the facts alleged in the first amendment. On May 5, 1958, the receivers filed an answer to the petition averring that the contractual arrangements for delivery of the lawnmowers took place March 21, 1958, three days prior to the appointment of the receivers and not subsequent to that appointment as claimed by Turf Man Sales Corporation, that on March 21, 1958, the lawnmowers were delivered to the carrier for shipment under a nonnegotiable straight bill of lading and that title to the lawnmowers passed to Eastern Supply Company on that date.

In presenting its petition, Turf Man Sales Corporation relies on three propositions as the basis for reclamation of the lawnmowers: (1) The insolvency of and the appointment of receivers for Eastern Supply Company constituted an anticipatory breach of its contract with Turf Man Sales Corporation, thus permitting Turf Man Sales Corporation to rescind the contract and reclaim the goods from the receivers; (2) the insolvency of Eastern Supply Company permitted Turf Man Sales Corporation to reclaim the lawnmowers within 10 days after their receipt by buyer under Section 2-702(1) (b) of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §2-702(1) (b); and (3) the receivers of insolvent Eastern Supply Com-

pany had received goods which were intended under the terms of the contract for delivery to the solvent company itself, and because of this substitution of a contracting party rescission and reclamation should be allowed Turf Man Sales Corporation.

In reply, the receivers rely on these propositions: (1) Title to the lawnmowers passed to Eastern Supply Company on March 21, 1959, upon delivery to the carrier; (2) only an actual misrepresentation by Eastern Supply Company or the receivers as to Eastern Supply Company's financial condition at the time of receipt of the lawnmowers would permit revesting of title in Turf Man Sales Corporation; (3) Section 2-702(1)(b) may not be invoked by Turf Man Sales Corporation since that section requires the seller to "reclaim" the goods within 10 days and Turf Man Sales Corporation did not physically reclaim but merely demanded the return of the lawnmowers; and (4) Section 2-702(1)(b) should not govern as it runs contrary to the State constitutional prohibition against secret liens, and such a provision has yet to be resolved with the "preference" provisions of the Federal Bankruptcy Act in a situation where only constructive fraud exists.

There seems to be no doubt that title to the lawnmowers passed to Eastern Supply Company upon delivery to the carrier on March 21, 1958. Not only is this general rule set out in prior case law (Harvey Probber, Inc. v. Kauffman, 181 Pa. Superior Ct. 281, 124 A. 2d 699 (1956)), but has been codified in Section 2-401(2)(a) of the Uniform Commercial Code, which reads:

"(a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; . . .": 12A PS §2-401(2)(a).

Turf Man Sales Corporation has attempted to bring this transaction within an exception to this broad rule, namely that where the contract requires delivery at a particular place, or as section 2-401(2)(b) of the code states, "delivery at destination," title remains in the seller until such specific delivery has been made. Turf Man Sales Corporation relies on the language in the purchase order signed by Eastern Supply Company: "Ship direct to 30th and Harcum Way, Pitts., Pa.," and cites Pittsburgh Provision & Packing Company v. Cudahy Packing Company, 260 Pa. 135, 103 Atl. 548 (1918). In that case, the court held that the words "Ship to Pittsburgh Provision & Packing Co., Union Stock Yards, Pittsburgh, Pa.," when considered with the words "c. a. f. Pittsburgh" were equivalent to "F.O.B. Pittsburgh" and that title did not pass until the goods arrived at the stock yard in Pittsburgh. Such is not the case here. The words, "Ship direct to 30th and Harcum Way, Pitts., Pa." stand alone. They are only a guidepost to enable the shipper to deliver the goods to the point where the buyer could best use them without additional handling. In no manner does such language connote a reservation of title until delivery to the particular place, either under the case or the provisions of the Uniform Commercial Code as cited.

As title did pass to Eastern Supply Company on March 21, 1958, Turf Man Sales Corporation must come forward with a principle of law which itself revests title to the lawnmowers in that company or allows the company to take action which results in such revesting.

As authority for the proposition that the insolvency of Eastern Supply Company constituted an anticipatory breach of its contract with Turf Man Sales Corporation entitling the latter to rescind the contract and reclaim its goods, Turf Man Sales Corporation relies primarily on the case In Re J. F. Growe Const.

Co., 256 Fed. 907 (N. D. N. Y. 1919). That case involved two shipments of steel sold to a construction company which subsequently became insolvent. In an action by the seller to recover the steel from the trustee in bankruptcy of the insolvent corporation, the court upheld rescission of the contract and allowed such recovery because: (1) As to the first shipment of steel, fraudulent misrepresentations as to the solvency of the construction company were made by its treasurer after inquiry by the vendor who had goods in transit, and on the basis of these misrepresentations the vendor failed to enforce its right to stop the goods in transit; and (2) as to the second shipment of steel, the contract to purchase it was executory at the time of the insolvency, title to the shipment never having passed to the vendee, charges never having been paid by the vendee and possession never having been taken by the vendee, and was therefore subject to rescission by the vendor on the basis of the vendee's insolvency. This limitation to executory contracts is distinctly set out in another case cited by Turf Man Sales Corporation: Central Trust Company of Illinois v. Chicago Auditorium Association, 240 U. S. 581 (1916).

In the case at bar the contract was not executory but was fully executed with the exception of payment on the part of Eastern Supply Company. There are no allegations that Eastern Supply or its receivers had willfully made fraudulent misrepresentations as to its solvency at the time the lawnmowers were accepted from the carrier. In this Commonwealth, as in most jurisdictions, silence on the part of the purchaser as to its financial condition is not such fraud as will void the sale: Bughman v. Central Bank, 159 Pa. 94 (1893).

Since Turf Man Sales Corporation cannot rely on any rights under case law to rescind its contract and recover its lawnmowers, it must rely solely on Section 2-702 (1) (b), which provides:

"(1) Where the seller discovers the buyer to be insolvent he may . . .

"(b) subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor . . . and within ten days after receipt, reclaim any goods received by the buyer on credit. . . .": 12A PS §2-702(1)(b).

On its face this section would seem to give Turf Man Sales Corporation an unqualified right to recover possession of the lawnmowers, since delivery to Eastern Supply Company was made on March 28, 1958, and a telephone demand for their return was made on April 4, 1958. The receivers have, however, argued that Turf Man Sales Corporation only "demanded" the return of the goods while the code requires a physical reclamation. Such an interpretation of this section is not justified. Not only would such a conclusion force vendors to devious means to gain physical possession of goods within the 10-day period, but in a suit which invoked this section as reciting a remedy available to vendors, the very thing which is the object of the suit would be deemed to be a prerequisite to obtaining it, i.e., possession of the goods.

The most valid argument against the use of this section as the determining factor is that of possible conflict with the provisions of the Federal Bankruptcy Act pertaining to preferences.

The Pennsylvania Bar Association notes to the section point out the possibility of such conflict. Further, it seems only proper that all differences pertaining to ownership or possession of goods in the hands of the receiver be resolved by one court at one time. As a petition in bankruptcy has been filed in the United States District Court for the Western District of Pennsylvania, a determination of the instant problem, in light of the possible conflict with the laws of the Federal court, might well prove futile.

We are of the opinion that the rule to show cause why the receivers of Eastern Supply Company should not surrender to petitioner certain goods now in the possession of the receivers should be dismissed for these reasons:

(1) Title to the goods passed to Eastern Supply Company on March 21, 1958, three days before the receivers for that company were appointed.

(2) The action of the receivers in accepting the goods from the carrier without disclosing the insolvency of Eastern Supply Company did not constitute fraud so as to enable Turf Man Sales Corporation to rescind the contract on the basis of an anticipatory breach and recover the goods. Even if such action were deemed fraudulent, the theory of anticipatory breach could not be invoked as the contract was, at the time of the alleged fraud, executed rather than executory.

(3) Section 2-702(1) (*b*) of the Uniform Commercial Code, which permits a seller of goods, upon learning of the buyer's insolvency, to reclaim its goods within 10 days after receipt of the goods by the purchaser, would determine the rights of the parties here if it were not for the fact that there exists a possible conflict between that section and the provisions of the Federal Bankruptcy Act pertaining to preferences. Because of the possible conflict it seems judicious to have the rights of the parties determined by the Federal district court before which bankruptcy proceedings are now pending.

The rule to show cause will therefore be dismissed.

### Order

And now, to wit, November 6, 1959, rule to show cause why the receivers of Eastern Supply Company should not surrender 150 lawnmowers to Turf Man Sales Corporation is dismissed.