## Claster Bros. Appellants, v. E. Katz.

*Sale—Fraud—Rule of Smith v. Smith to be strictly construed.*

The intention of the buyer of goods at the time of purchasing them, not to pay, together with his insolvency at the time and his knowledge of it not communicated to the seller, will not avoid the sale after the delivery of the property sold. This is the rule of Smith v. Smith, 21 Pa. 367, recently recognized and followed as authority in Pennsylvania, but it is a rule which is declared to be not in harmony with that of a majority of other states, nor with sound policy or the principles of business honesty, and the courts will construe it strictly and will not go a step beyond it. Any additional circumstance which reasonably involves a false representation will be held sufficient to take the case out of the rule.

Where, in addition to insolvency known to the buyer and undisclosed to the seller, the buyer, before the delivery of the goods confesses a judgment enforceable at once, knowing that the effect of its enforcement will be to disable him from continuing his business, and it is so used, these

additional circumstances are sufficient to take the case out of the strict rule of Smith v. Smith.

Argued Nov. 10, 1897.   Appeal, No. 135, Oct. T., 1897, by. plaintiffs, from judgment of C. P. Lancaster Co., Nov. T., 1896, Nos. 35 and 36, on verdict for defendant.   Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Sheriff's interpleader.   Before BRUBAKER, J.

The value of the goods in controversy appears to have been somewhere between $82.00 and $152.27.

The facts sufficiently appear in the opinion of the court.

Verdict for defendant.   Plaintiffs appealed.

*Errors assigned* were, (1) In charging the jury as follows : " The law in this state has been well settled since the opinion of Judge MITCHELL, which has been quoted here, who had given an opinion in a case in the Supreme Court of this state. The law in this state is entirely different from the laws in most of the states of the Union.   In New York and New Jersey, and especially where they have codes, the law is, that fraudulent insolvency in itself is sufficient to rescind the contract ; but the state of Pennsylvania, by an old decision rendered very many years ago, held that there must be more than fraudulent insolvency ; that it must be shown that the goods were procured by a trick, artifice or deception, or conduct which reasonably involves a false representation to accomplish the purpose." (2) In its answer to plaintiff's first point, which point and answer are as follows : " 1. If a purchaser about the time of the delivery of the goods confesses judgment, and disables himself from continuing business, he commits an act of legal if not actual fraud, and acquires no title to the goods.   *Answer :* That point we have to affirm as a general proposition ; but before you can render a verdict for the plaintiffs they must show, as I have said before, that Blankfield practiced artifice or deception, or conduct between them which reasonably involves a false representation, to accomplish the purpose before he got the goods.   Unless the plaintiffs' story is a true one, your verdict must be for the defendant, if you believe Blankfield.   If you believe the plaintiffs, then your verdict should be in favor of the

plaintiffs." (3) In its answer to plaintiff's second point, which point and answer are as follows: "2. If the jury believe that after the purchase of the goods in controversy from Claster Bros., and before their shipment, Blankfield confessed a judgment to E. Katz, it was such a change in the circumstances as the vendor was entitled to know, and was a most material fact in the transaction. Having concealed from Claster Bros. the knowledge that such a judgment had been confessed, no title passed from Claster Bros. to Blankfield, which could be subject to the levy of the executions issued upon the Katz judgments. *Answer:* That point we must negative as it stands. That is true, provided, as I have said so frequently, you believe that a trick, artifice or fraud, or conduct between the parties equivalent to such fraud, was practiced on the day that the goods were purchased by Blankfield. That in itself would not be held sufficient, unless this artifice, trick or deception was perpetrated by Blankfield." (4) In answer to plaintiff's third point, which point and answer are as follows: "3. If the jury believe that at the time of the sale of the goods in controversy J. Blankfield represented that he had a stock of from $2,000 to $3,000, was not indebted to any one, except a small balance of $40.00 on a note of his sister, and that he owed no borrowed money, and had no judgments outstanding, and the facts thus stated were untrue, and on the faith of such representations Clasters parted with their goods, then the sale from Claster Bros. to J. Blankfield would be void, and Claster Bros. would have a right to the property claimed in this issue, as the title to the same never passed out of them to Blankfield. *Answer:* That would be true, providing Blankfield was insolvent at the time."

*Chas. I. Landis* and *B. F. Davis*, for appellants.—There was error in the charge of the court in that it stated an erroneous principle as having a direct operation on the evidence, and withdrew the attention of the jury from other points: Deal v. McCormick, 3 S. & R. 343; Young's Est., 65 Pa. 101.

The tendency of the charge was to mislead the jury: Bisbing v. Nat. Bank, 93 Pa. 79; Penna. Railroad Co. v. Berry, 68 Pa. 272.

The effect of the answer of the court to the third and fourth points was instruction to the jury that the confession of the

judgment could not in any manner affect the rights of the plaintiff, and therefore, the sale was good against him. This was an incorrect statement of the law: Bughman v. Central Bank, 159 Pa. 94.

It is error not to answer directly the question proposed by counsel: Powers. v. McFerran, 2 S. & R. 44; Smith v. Thompson, 2 S. & R. 49; Tenbrooke v. Jahke, 77 Pa. 392.

*W. U. Hensel,* with him *J. Hay Brown,* for appellee.—The errors complained of to the charge of the court and answers to points, if errors they be, are sufficiently covered and corrected by the general charge, where the court subsequently said, "You should try to reconcile the evidence if you can; but if you cannot reconcile it, you must say whose testimony you will believe. If you believe the plaintiffs and the testimony adduced by them in their behalf, that J. Blankfield at the time he purchased these goods made such representations as they say he made, then we do not hesitate to say to you in our instructions, there was a trick, artifice or deception used in the getting of these goods. That is the issue raised here."

This was a correct statement of the law of Pennsylvania as abundantly appears from the authorities: Bughman v. Bank, 159 Pa. 94; Perlman & Cooper v. Sartorius, 162 Pa. 320; Cooperage Co. v. Gaul, 170 Pa. 545; Labe v. Bremer, 167 Pa. 15; Lowrey & Co. v. Ulmer, 1 Pa. Superior Ct. 425; Wessels v. Weiss Bros., 156 Pa. 591; Ralph v. FonDersmith, 3 Pa. Superior Ct. 618.

The appellate court will not reverse by reason of a fragment, which, wrested from its context, seems to present an erroneous statement of the law: Riegel v. Wilson, 60 Pa. 388; Bartley v. Williams, 66 Pa. 329.

While a party is entitled to an explicit answer to his prayer for instruction, the court may so qualify it as to conform to the evidence: Killion v. Power, 51 Pa. 429.

If the defendant in his prayer for instruction sets up a broader right than he is entitled to, the judge should not deny it altogether, but should explain to the jury the true extent of the right: Amer v. Longstreth, 10 Pa. 145.

It is enough if the points are sufficiently answered in the charge: Scheuing v. Yard, 88 Pa. 286.

To qualify an affirmance of a point by the cautionary statement of an abstract principle of law is not error: Yardley v. Cuthbertson, 108 Pa. 395; Duncan v. Sherman, 121 Pa. 520.

If the material questions of fact are fairly submitted, as presented by the evidence, an expression of an opinion upon the weight of the plaintiff's testimony is not error: Didier v. Penna. Co., 146 Pa. 582.

OPINION BY RICE, P. J., February 19, 1898:

This was a sheriff's interpleader to try the title to certain goods levied upon as the property of J. Blankfield. The plaintiffs were in the wholesale clothing and notion business in the city of Harrisburg, and Blankfield was in the same business as a retailer in Ephrata in the county of Lancaster.

On or about September 13, 1896, Blankfield ordered goods of the plaintiffs to the amount of about $300. Later in the same day he ordered goods of E. Katz, also doing business in Harrisburg, to the amount of $292.73, and on September 15th, (pursuant to an agreement made on the 13th), gave her a judgment note dated September 14th, and payable one day after date for $619.13. It is alleged that this note was given for the goods ordered on September 13th, and money that he owed her.

On September 15th Blankfield telegraphed the plaintiffs to ship only one half the goods. Accordingly, on September 16th or 17th, the plaintiff shipped one half the goods ordered without any knowledge that, in the mean time, Blankfield had given to Mrs. Katz the judgment note above referred to.

On September 23d, Mrs. Katz entered judgment on the note and also on another note bearing date May 1, 1896, for $300, the consideration for which does not distinctly appear, and issued executions. On the following day a levy was made on the goods in Blankfield's store, including those ordered from the plaintiffs that had not been disposed of. These goods (some of which were still in the original packages) were claimed by the plaintiffs and appraised at $80.00. The remaining goods were sold at sheriff's sale for $895.

Blankfield owned no real estate, and, as far as appears, no other property except that in his store. He was indebted to other parties, but in what amount does not directly appear.

Insolvency has been defined as the state of a person who,

from any cause, is unable to pay his debts in the ordinary or usual course of trade: Levan's Appeal, 112 Pa. 294.   But it is well settled in Pennsylvania that the insolvency of the vendee of goods at the time of the sale, although known to him and not disclosed to the vendor, is not alone such fraud as will enable the latter to rescind the sale and reclaim the goods after they had come fully into the possession of the vendee.   Many of the late cases in which this rule has been recognized and applied are cited in the opinion of our Brother ORLADY in Ralph v. FonDersmith, 3 Pa. Superior Ct. 618, and need not be cited here.   In Smith v. Smith, 21 Pa. 367, it was held that the added fact that the vendee intended not to pay would not change the rule which was thus stated in the syllabus: " The intention of the buyer of goods, at the time of purchasing them, not to pay, together with his insolvency at the time and his knowledge of it not communicated to the seller, will not avoid the sale after the delivery of the property sold."

It was said in Bughman v. Central Bank, 159 Pa. 94 that the law as thus declared in Smith v. Smith, was not in harmony with that of a majority of other states, nor with sound policy or the principles of business honesty, and, moreover, was a departure from the previous decision in Mackinley v. McGregor, 3 Wh. 369.   " But," said Mr. Justice MITCHELL, " it has been expressly followed in several cases, and has remained in the books without being overruled, for forty years, and recognizing that the subject is one on which legal minds have always been apt to differ, we do not think it wise now, notwithstanding our own clear convictions on the principle, to unsettle the law by another change.   We will therefore stand on the authority of Smith v. Smith and its kindred cases, but we will not go a step beyond what they require.   Any additional circumstance which tends to show trick, artifice, false representation, or, in the language of Smith v. Smith itself, ' conduct which reasonably involves a false representation ' will be sufficient to take the case out of the rule of those authorities."

It needs no argument to show that the instruction complained of in the first assignment goes very far beyond what the rule declared in Smith v. Smith required.   Conceding that a seller must take the risk of the insolvency of the buyer and of his secret intention not to pay, must he also take the chance, that,

the buyer has committed, or between the sale and the delivery of the goods, will commit, an act of fraudulent insolvency, whereby the seller will be effectually prevented from collecting the price of his goods? Clearly not. To obtain goods in that way is to obtain them by a trick,—a "fraud acted out"—which only needs the sanction of the law to make it a most successful method of cheating. From the very nature of a transaction a fact not disclosed may be such that it is impliedly represented not to exist, and whilst under our decisions a buyer is not held to an implied representation of solvency, he may be fairly presumed to represent that he has not deliberately set a trap for the unwary seller. We need not discuss this assignment further; nor, since the case must be sent back for a retrial upon other grounds, need we consider whether the error into which the learned judge inadvertently fell in stating the rule, was rendered harmless by other portions of the charge.

The question raised by the second and third assignments of error relates to the effect of acts of the buyer, between the purchase and the delivery of goods, upon the right of the seller to rescind the sale, after the goods have come into the possession of the buyer. The legal principle, which, in their first point, the plaintiffs asked to have applied to the case was that, if the buyer about the time of the delivery of the goods confesses judgment and disables himself from continuing business, he commits an act of legal, if not actual, fraud, and acquires no title to the goods. The court affirmed the point as an abstract proposition of law, but accompanied the affirmance with instructions to the effect, that to entitle the seller to rescind the sale he must show that it was induced by some trick, artifice or deception practiced by the buyer on the day the contract was made. The practical effect of thus qualifying the point was to nullify it, and to leave the impression on the jurors' minds, that, unless such deception was practiced, the subsequent acts of the buyer were immaterial. Whereas, if the principle invoked by the plaintiffs was sound, and the facts of the case warranted its application, the plaintiffs had a right to rescind the sale, whether active misrepresentations were made by Blankfield on the day the goods were ordered or not.

The confession of judgment by a buyer of goods between the purchase and delivery of the same is not, per se, such a fraud

upon the seller as entitles the latter to rescind the sale. Other facts must be present in the case in order to warrant the application of the principle contended for; and if the evidence concerning them is conflicting, or leaves them as subjects of inference purely, the question must be submitted to the jury under proper instructions. Hence, we are unable to say, that the plaintiffs were entitled to an unqualified affirmance of their second point. The defendant's assets and liabilities at the time of the confession might have to be considered.

But where, in addition to insolvency known to the buyer and undisclosed to the seller, the buyer, before the delivery of the goods, confesses a judgment which is enforceable at once, and he knows that the effect of its enforcement will be to disable him from continuing his business and to bring it to an end, and it is so used, these additional circumstances are sufficient, in our opinion, to take the case out of the strict rule of Smith v. Smith, and kindred cases. The decision in Bughman v. Central Bank, 159 Pa. 94, is directly in point. It appeared there that Fawcett and Sons sent two barges to the plaintiff's works to be loaded with coal in accordance with their previous course of dealing on credit by notes running for four months. On the same day Fawcett and Sons confessed judgment to the defendant, and on November 21, executed and delivered to the defendant a bill of sale covering practically all their coal boats, and including the two barges with the coal contained therein purchased from the plaintiff. The evidence tended to show that the bill of sale was signed and delivered in the forenoon of the 21st, at which time only one of the barges was loaded, and that the other was not loaded until the afternoon of that day. The question was as to the right of the plaintiff to rescind the sale. It was contended there, as it is here, that, in the absence of active misrepresentations, the rule laid down in Smith v. Smith, applied, but the Supreme Court emphasized their declaration that they would not go a step beyond what that case requires, in the following ruling: " In the present case, Fawcett & Sons at about the time if not before the delivery of the coal not only committed an act of insolvency by the confession of judgment and bill of sale to the bank, but in fact disabled themselves from continuing their business, and practically brought it to an end. This was a most material fact in the transaction. It

was such a change in circumstances as the vendor was entitled to know, and it does not admit of doubt that if he had known it, he would not have delivered the coal. In the New York cases this fact makes the purchase a fraud in law, and is conclusive: Mitchell v. Worden, 20 Barb. 253. This we think is the sound and true rule. It is in accord with what we know would be the practical result in business life, and it follows the close analogy of a concealed defect in an article sold, which entitles the purchaser to rescind the sale. We hold therefore that as between the appellant and Fawcett & Sons the transaction was a legal, if not an actual fraud, and passed no title to the coal."

We do not hold that it was the duty of the court to declare that the facts of the present case required the application of this legal principle, but we are clearly of opinion that there was ample evidence to warrant the jury in finding the facts to which it would be applicable. Hence, while the plaintiff's first point required explanation, and the second qualification, the principle involved arose fairly out of the evidence, and was not subject to the qualification which was put upon it in the answers.

If the facts were as stated in the plaintiff's third point, then a gross fraud was practiced to induce the plaintiffs to part with their goods, and they had a right to rescind the sale and to recover in the issue being tried, without being compelled, in addition, to prove that the purchaser was insolvent. The point was in exact accord with instructions given in the general charge, and should have been distinctly and unequivocally affirmed. The qualification, "provided Blankfield was insolvent at the time" was inappropriate in answer to that point, and tended to mislead.

The judgment is reversed and a venire facias de novo awarded.