### In re SPANN.

(District Court, N. D. Georgia, N. W. D. November 30, 1910.)

No. 339.

1. BANKRUPTCY (§ 140*)—PROPERTY OF BANKRUPT—PURCHASE—DELIVERY.
   A sale of goods to a person contemplating bankruptcy is not complete until delivery.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—PROPERTY OF BANKRUPT—FRAUDULENT PURCHASE—CONCEALMENT OF FINANCIAL CONDITION.
   Where claimant sold certain shoes to a bankrupt which had been delivered only three days before the petition in bankruptcy was filed, and were all on hand with the exception of two or three pairs when the trustee took possession, and it appeared that the bankrupt, when purchasing the shoes, though knowing his precarious financial condition, failed to disclose the same, the sale was fraudulent and void, entitling the seller to recover the shoes or their proceeds against the bankrupt's trustee.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 219; Dec. Dig. § 140.*]

In the matter of bankruptcy proceedings of Joseph E. Spann. On petition to review a referee's order denying a petition of Smart Brothers & Company for the proceeds of certain shoes delivered to the bankrupt at an alleged fraudulent sale. Petition granted, and determination of referee set aside.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

F. K. McKutchen, for trustee.
Maddox, McCamy & Shumate, for petitioners.

NEWMAN, District Judge. This is a petition to review the action of the referee in the matter which will fully appear from the following statement made by the referee on the petition to review his action:

"Smart Bros. & Co., creditors of the bankrupt, intervened in said cause in due time, setting up title to certain shoes to the value of $460.50, said shoes having been sold by Smart Bros. & Co. to J. E. Spann on June 13, 1910, and shipped by them on August 9, 1910, and received by the bankrupt and placed in his stock August 10, 1910; the date of receipt by the bankrupt being five days prior to the date of his adjudication in bankruptcy. By agreement the trustee sold the shoes, realizing $330.39.

"Smart Bros. & Co. set up in their intervention that title had never passed to said shoes, because of fraud upon them in the following particulars: First. That Spann knew he was insolvent when he purchased the goods and that he would be unable to pay for them. Second. That at the time of the receipt of the goods by the bankrupt he was contemplating filing his petition in bankruptcy, and in fact he had fully determined to do so. Third. That the interveners were ignorant of the true financial condition of the bankrupt at the time the goods were sold to the bankrupt, and were still ignorant of his financial condition when the goods were shipped to him and received by him.

"The trustee answered denying all the material allegations of the intervention and setting up specially that there was no fraud practiced upon the interveners, and that no fraudulent intention existed on the part of the bankrupt in purchasing the goods or receiving them and placing them in his stock; that bankrupt was solvent at the time of the purchase and at the time of the receipt of the goods and was not positive that he would go into bankruptcy. He was inclined to the hope that he could pacify his creditors, and did not, in fact, know until the 13th of August, 1910, that he would be obliged to go into bankruptcy.

"The facts shown to the referee were as follows:

"The bankrupt ran his business very loosely, and it appears from the facts adduced before the referee that he is not a capable business man. He appears to have kept his affairs in such shape that he does not have a clear knowledge of the general status of his business. He ran a store first on the outskirts of Dalton, Ga., in a cotton factory settlement, and while at this point, in January, 1910, he made a statement to R. G. Dun & Co., which clearly appears to have been inaccurate. He does not profess to state positively just how accurate that statement was, but testifies that he guessed at the amounts, and it is fairly apparent the statement was inaccurate as to the amounts owing by the bankrupt, and misstated to some extent his net worth. There is no proof that Smart Bros. & Co. sold the bankrupt on the strength of this statement, or that it ever reached Smart Bros. & Co. or was communicated to them. The bankrupt's testimony being positive that he did not give a statement of his financial condition to Smart Bros. & Co. and no false representations whatever were made to them. The order for the goods was given on August 9th, and Smart Bros. & Co. shortly afterwards sent duplicate of the order with the following acceptance indorsed thereon: 'Duplicate many thanks.   Edward Smart.'

"The bankrupt moved his business to the business center of Dalton, Ga., in hopes of improving his financial condition. After this move he became less prosperous in his business, and on August 15, 1910, was adjudicated bankrupt. For a short time prior to his adjudication in bankruptcy creditors were pushing him, pressing for payment of their claims. The bankrupt admits this, but claims he kept hoping to pacify his creditors and pull through the dull season. He consulted his attorney several days prior to the date of his adjudication, because of his shaky financial condition. The bankrupt's testimony is, however, that at the time he received the goods in question, and at the time he was consulting with his attorney, he did not know he would

have to go into bankruptcy; he hoped to pull through, and, in fact, did not decide to go into bankruptcy until August 13, 1910. In fact, he thought then he might be solvent and thinks if his debts could be collected he could even now pay out.

"The goods in question were received by the bankrupt on August 10th, and it appears that he must have thought at that time that his solvency was doubtful and that his financial condition was very shaky.

"An order was entered by the referee refusing the intervention, and this order is certified for review by the court. The referee was moved by the following reasons in passing the order in question: The proof does not show any fraud whatever practiced at the time the goods were purchased. The bankrupt's financial condition up to that time is uncertain, though it is very probable that he might have been solvent; even though insolvent it would not have been fraud upon Smart Bros. & Co. unless some misrepresentation took place. The interveners received the order, had ample opportunity to investigate the financial condition of the bankrupt, yet shipped the goods without question as above set out. The bankrupt's testimony, being the only direct evidence offered, is not strong enough to show any fraudulent intention on his part, even at the time of the receipt of the goods. Even though the bankrupt had sinister motives in receiving the goods when he was in a shaky financial condition, it is doubtful if that would be sufficient to vitiate the transaction and restore the title to the goods to the vendors, the goods having been purchased in evident good faith and the purchase consummated by the delivery of the goods as above set out. However, as above stated, though it appears that the bankrupt was in a very shaky financial condition and probably insolvent, still he must have realized this fact at the time he received the goods, if his act in receiving them could at all affect the legality of the transaction."

I am unable to agree with the referee in the conclusion he has reached in this matter. It is perfectly clear from the evidence, indeed from the evidence of the bankrupt himself, and it appears, I think, also clearly from the statement of the referee, that on August 10th, when these goods were received by the bankrupt and placed in his stock, that he knew he was insolvent. He must have known that it was entirely probable, and indeed almost certain, that within a very few days he would be compelled to acknowledge his bankruptcy and file a petition to have himself so adjudged.

The purchase was not complete, in my opinion, until the goods were delivered, and if, at the time of the delivery of the goods, the bankrupt concealed his financial condition, he is guilty of a fraud which authorized the vendors to ask for a rescission and delivery back to them of the goods sold and still in the possession of the bankrupt. The goods—shoes—had been in the store only three days when the petition in bankruptcy was filed and were all on hand, and probably in the original packages, except some two or three pairs, which, according to the testimony of the bankrupt, had been sold between the time that they were received and the institution of the bankruptcy proceedings.

If the purchaser concealed his insolvency and knowledge of the fact that he could not pay for the goods, it would void the sale both under the law of Georgia and the ruling of the Supreme Court of the United States.

In Donaldson, Assignee, v. Farwell et al., 93 U. S. 631–633, 23 L. Ed. 993, the opinion of the court by Mr. Justice Davis, which is brief, not only determines this question, but also that the trustee in bank-

ruptcy would obtain no greater rights than the bankrupt had. The opinion referred to is as follows:

"The instructions present the question of law arising upon the facts which this controversy involves. The doctrine is now established by a preponderance of authority that a party not intending to pay, who, as in this instance, induces the owner to sell him goods on credit by fraudulently concealing his insolvency and his intent not to pay for them, is guilty of a fraud which entitled the vendor, if no innocent third party has acquired an interest in them, to disaffirm the contract, and recover the goods. Byrd v. Hall, *41 N. Y. 647; Johnson v. Monell, *41 N. Y. 655; Noble v. Adams, 7 Taunt. 59; Kilby v. Wilson, Ryan & Moody, 178; Bristol v. Wilsmore, 1 Barn. & Cress. 513; Stewart v. Emerson, 52 N. H. 301; Benjamin on Sales, § 440, note of the American editor, and cases there cited.

"Here the vendor exercised the right of rescission shortly after the sale in question, and as soon as they obtained knowledge of the fraud. If, therefore, this controversy were between Mann and them, it is clear that he would not be entitled to recover.

"The assignment relates back to the commencement of the proceedings in bankruptcy, and vests, by operation of law, in the assignee the property of the bankrupt, with certain specified exceptions, although the same be then attached. It also dissolves any attachment made within four months next preceding the commencement of the proceedings. If there be no such liens, and the property has not been conveyed in fraud of creditors, he has no greater interest in or better title to it than the bankrupt. Only the defeasible title of the latter to the goods in controversy passed to the assignee, and it was determined by a prompt disaffirmance of the contract."

Certain sections of the Civil Code of Georgia of 1895 pertinent here are as follows:

"Sec. 3532. Fraud or duress, by which the consent of a party had been obtained to a contract of sale, voids the sale."

"Sec. 3534. Concealment of material facts may in itself amount to fraud. (1) When direct inquiry is made, and the truth evaded. (2) When, from any reason, one party has a right to expect full communication of the facts from the other. (3) When one party knows that the other is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silent."

"Sec. 4027. Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case."

The Supreme Court of Georgia, in Johnson & Co. v. O'Donnell & Burke, 75 Ga. 453, in the opinion by Justice Blanford, says this:

"Where a party purchases goods, who is insolvent, and, not intending to pay, conceals his insolvency and his intention not to pay for them, he is guilty of a fraud which entitles the vendor, if no innocent third party has acquired an interest in them, to disaffirm the contract and recover the goods. [Donaldson v. Farwell] 93 U. S. 633 [23 L. Ed. 993]; [Ash v. Putnam] 1 Hill [N. Y.] 302–311; [Devoe v. Brandt] 53 N. Y. 462; [Stevens v. Brennan] 79 N. Y. 255; 15 M. & W. 216; [Carter v. Lipsey] 70 Ga. 417; [Crine & Daniels v. Davis] 68 Ga. 138; [Cohen v. Meyers, Cohen & Co.] 42 Ga. 46; Code, §§ 2635, 3175, 3173. Under the allegations in the bill, a court of equity has jurisdiction, and the remedy in equity is more adequate and complete than at law. Code, § 2635."

I think the facts in the present case bring it clearly within the rule laid down both by the Supreme Court of the United States and by the highest court in the state. It must have been perfectly manifest to Spann that he would be unable to pay for the shoes purchased from

these intervening petitioners, and, as a consequence of that, of course he did not intend to pay for them. It would be wholly inequitable and wrong, under all the circumstances of the case, for the court to take the proceeds from the sale of the shoes and distribute them among the other creditors of the bankrupt.

The action of the referee is disapproved, and he is directed to enter an order turning over the amount realized from the sale of the shoes to the petitioner, Smart Bros. & Co.