## HALSEY v. DIAMOND DISTILLERIES CO.

(Circuit Court of Appeals, Third Circuit. November 6, 1911.)

No. 1,510.

BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—FRAUDULENT PUR-
CHASE.

Bankrupt, a wholesale liquor dealer, 10 days before his bankruptcy,
when hopelessly insolvent, and after the commission of an act of bank-
ruptcy and disposing of practically all of his property, ordered 10 bar-
rels of whisky from claimant, which he received on the day the peti-
tion was filed and a receiver appointed, and removed from the station
without informing the receiver. *Held*, that the purchase was fraudulent,
and claimant was entitled to reclaim the goods from bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

Petition for Revision of Proceedings of the District Court of the
United States for the Middle District of Pennsylvania, in Bankruptcy.

In the matter of David Ungerleider, bankrupt. Petition by John R.
Halsey, trustee, to review an order permitting the Diamond Distilleries
Company to reclaim property. Denied.

William N. Reynolds, Jr., and Abram Salsburg, for petitioner.
W. H. Goodwin, for respondent.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG,
District Judge.

BUFFINGTON, Circuit Judge. This is a petition to review in
bankruptcy. In the court below the Diamond Distilleries Company
filed a petition to reclaim from John R. Halsey, trustee of David Un-
gerleider, bankrupt, 10 barrels of whisky which it alleged the bank-
rupt had fraudulently obtained from the petitioner. A special master
to whom the petition was referred reported against the petitioner;
but the court, in an opinion herewith reported, reversed the master,
granted the prayer of the petition, and ordered the trustee to return
the whisky. Thereupon the trustee preferred this petition to review.

We find no error in the record. The facts were that the bankrupt,
a wholesale liquor dealer, ordered this whisky by mail from the dis-
tilling company about 10 days before the bankruptcy. It was shipped
by rail f. o. b. in Cincinnati and was received by the bankrupt in Penn-
sylvania on the day the petition in bankruptcy against him was filed
and a receiver appointed. The bankrupt within five months of his
bankruptcy had bought $25,000 of goods for none of which he had
paid. Prior to ordering the whisky here in question, he had committed
the act of bankruptcy on which he was later adjudged. He had sold
his real estate during the month preceding this purchase of whisky, and
when he failed he had no goods in his wholesale liquor establishment
except 80 some bottles of whisky, a single barrel of wine, and a cash
register. His other assets consisted of uncollectible accounts. More-
over, on the day the petition in bankruptcy was filed, the bankrupt
took the whisky from the freight station, and, instead of delivering

it to the receiver, carried it away and did not inform the receiver. In view of such facts, we find no error in the court below awarding reclamation. The alleged purchase was a mere semblance on the bankrupt's part to fraudulently get the goods. He had committed an act of bankruptcy, and his absolute and inevitable bankruptcy was only a question of proceedings against him. No creditor is wronged by the court's action, and whether we apply the law of Ohio bearing on the right of reclamation in case of fraudulent purchases (Talcott v. Henderson, 31 Ohio St. 162, 27 Am. Rep. 501; Heddleson v. Hendricks, 49 Ohio St. 297, 34 N. E. 696), or of Pennsylvania (Bughman v. Central Bank, 159 Pa. 94, 28 Atl. 209; Claster v. Katz, 6 Pa. Super. Ct. 487), to this purchase, the result is the same.

The petition to review is therefore denied.

NOTE.—The following is the opinion of Orr, District Judge, specially presiding in the court below:

ORR, District Judge. This matter comes before the court upon exceptions to the report of the special master in reclamation proceedings. The material parts of the report of the special master are as follows:

"The Diamond Distilleries Company, of Cincinnati, Ohio, filed reclamation proceedings on December 8, 1910, for the purpose of reclaiming five barrels of whisky shipped the 28th day of October, 1910, to David Ungerleider, now bankrupt, and doing business in the city of Wilkes-Barre, Pa. Answer was filed, issue joined, and the matter was referred to undersigned as special master to take evidence and make report thereon. A second petition for reclamation of five barrels of whisky was filed with the master, and by agreement between parties in interest it was agreed that both petitions should be heard at the same time, as the facts governing both petitions were the same. From testimony, it appeared: That on the 26th day of October, 1910, the authorized agent of the bankrupt ordered ten barrels of whisky from the Diamond Distilleries Company of Cincinnati, Ohio, and that on the 28th day of October, 1910, the whisky was shipped to the bankrupt, and was duly delivered to him by the carriers on November 5, 1910, at 3:10 p. m., and the freight was paid by Mr. Ungerleider, the bankrupt. That on the same day, between the hours of 4 and 5, the Pennsylvania Railroad Company, the carrier from Cincinnati, Ohio, to Wilkes-Barre, was notified to withhold the delivery. On the same day, petition in bankruptcy was filed, and John R. Halsey was appointed receiver, and immediately proceeded to take charge of the assets of the bankrupt. Five barrels of this shipment were sold by the bankrupt to James Poland, a hotel proprietor in the city of Wilkes-Barre. That said five barrels of whisky were returned to Mr. Halsey, who was elected trustee in the matter; payment having not been made by Mr. Poland to the bankrupt at the time that the receiver took charge. Subsequently the receiver took possession of the remainder of the consignment, to wit, five barrels of whisky, which were stored on Sherman street, in the city of Wilkes-Barre. The case of In re Allen, 24 Am. Bankr. Rep. 574, 178 Fed. 879, Archbald, District Judge, is so closely allied to the case at issue as to the facts that the rule laid down there applies with equal force in the present proceedings. I respectfully recommend that the proceedings be dismissed, at the costs of the petitioners."

To that report a number of exceptions have been filed by the claimant, which are, briefly, to the effect that the special master erred in not finding that the contract of sale was a contract made and performed in the state of Ohio; in not finding that the contract was governed by the law of the state of Ohio; in not finding that under the law of Ohio "a contract for the purchase of goods on credit, with intent on the part of the purchaser not to pay for them, is fraudulent, and, if the purchaser has no reasonable expectation of being able to pay it, is equivalent to an intention not to pay"; in not finding that the bankrupt at the time of the sale did not intend to pay for the

merchandise; in not finding that the claimant had disaffirmed or rescinded the contract; and in not finding that the claimant was entitled to possession of the merchandise. There were also general averments of error in findings of fact and conclusions of law. A careful consideration of the testimony and of the decisions cited leads me to the conclusion that the special master was in error and the exceptions should be sustained.

The case cited by the special master, to wit, In re Allen, 24 Am. Bankr. Rep. 574, 178 Fed. 879, does not cover the case at hand.. In that case there was no fraud. The claimant there insisted upon his right to the goods because of stoppage in transitu. The right of stoppage in transitu is a right of every seller to stop goods before they come into the hands of a failing buyer, whether there be fraud which induced the sale or not. In that case, too, the goods passed into the hands of the receiver, thus making an actual delivery, which destroyed the right of the seller to stop and reclaim its goods. In the case at bar, while there was some evidence of notice to the railroad company not to deliver the goods, such notice or attempt to stop delivery was merely incidental, and it is not upon that ground that the claimant relies. Indeed, there was no sufficient evidence that the notice to stop delivery of the merchandise came originally from the sellers. The evidence that notice to the local agent at Wilkes-Barre was received from the Cincinnati office of the railroad company was probably introduced for the purpose of strengthening claimant's position as to the rescission. It has no bearing in the case, and does not affect the court in its consideration of the questions involved.

The goods claimed are ten barrels of whisky, ordered in writing by the defendant under date of October 26, 1910, from the claimant, as follows: "Gentlemen: In writing to you on the 21st inst., our intentions were to ask you your very best price on ten barrels of Velvet Spirits. Since receiving your favor of the 24th inst., we note your price on same and would ask that you send us ten barrels @ $1.40. Cash in ten days." In pursuance of that letter the claimants shipped, on October 28, 1910, the merchandise requested. That whisky was received in Wilkes-Barre on or immediately before November 5, 1910. On that day the involuntary petition in bankruptcy had been filed against the buyer, and a receiver had been appointed for his estate in bankruptcy. Notwithstanding that fact the bankrupt went to the railroad office, paid the freight upon the whisky. delivered five barrels of it to Poland's Hotel, and delivered five barrels of it to a man named Horowitz. The receiver never found the invoices for the merchandise, and did not know anything about the merchandise until some creditors told him that some whisky was taken to Poland's Hotel, and did not know of the other five barrels delivered to Horowitz until the attorneys for the bankrupt filed the schedules. The receiver then recovered all of the said ten barrels, and they are now in his possession, properly identified.

The claimant subsequently gave notice to the receiver of its intention to reclaim the merchandise. Just when that notice was given does not appear, but it was prior to the filing of the reclamation proceedings on December 8, 1910. It cannot be urged that the claimants unduly delayed their notice of rescission, because no one was prejudiced by the delay. That delivery of the merchandise was made in Ohio is evidenced by the fact that the freight was paid by the buyer, and not by the shipper, and by the further fact, as testified to by the agent of the railroad company, that the goods were shipped f. o. b. Cincinnati, Ohio.

Before considering the law of Ohio, it is well to note the fact that purchases by the bankrupt of merchandise within four or five months of the time of filing the petition in bankruptcy aggregated $20,491.48, all of which was unpaid at the time of the filing of the petition, and that according to his own statement there were debts due the bankrupt on open accounts amounting to $8,408.22. These figures are taken from his schedules, but he testified to the correctness of his schedules at the hearing in this proceeding. He further testified to having sold his real estate in the month of October previously. The receiver testified that when he took charge of the bankrupt's place of business there were 80 some bottles of whisky, "and there was possibly one gallon, and only one full barrel, and that was wine."" He sold all

the stock except the whisky claimed in this proceeding, and received $505 for the stock, $160 for the cash register, $107 for the bottles, and $110 for liquors and license. The hearing before the special master took place on March 8, 1911. The receiver at that time stated that he had received nothing so far on the book accounts.

From such a state of facts it seems as if no other conclusion could be drawn but that the buyer purchased the merchandise from the claimant with a knowledge of his insolvency and knowledge of his inability to pay for them, especially when taking into consideration the fact that he had committed an act of bankruptcy, as appears by his subsequent adjudication. If he had knowledge of his own insolvency and of his inability to pay for the merchandise, his intention not to pay for it should be presumed. This is the law of Ohio, and should be the law of every other state in the Union. See Talcott v. Henderson, 31 Ohio St. 162, 165, 27 Am. Rep. 501. In that case, Judge McIlvaine, delivering the opinion, said: "Indeed, I would not deny that an intention not to pay might be inferred from the mere fact that the purchaser had undisclosed knowledge of his *gross* insolvency; but in such case the inference may be rebutted by other facts and circumstances." There is nothing in this case to rebut the inference to be drawn under that decision.

In Pennsylvania, unfortunately, the doctrine has prevailed as expressed in the syllabus of Smith v. Smith, 21 Pa. 367, 60 Am. Dec. 51, as follows: "The intention of the buyer of goods at the time of purchasing them not to pay, together with his insolvency at the time and his knowledge of it, not communicated to the seller, will not avoid the sale after the delivery of the property sold." The doctrine announced by that case is not honest, and not good morals, and the courts of Pennsylvania have realized that fact, and have tried to get away from it with only a partial degree of success. The rule now is that where any other fact exists, or there are any additional circumstances which reasonably involve a false representation, the court will hold that it is sufficient to take the case out of the rule. See Bughman v. Central Bank, 159 Pa. 94, 28 Atl. 209; Claster Bros. v. Katz, 6 Pa. Super. Ct. 487. I have no doubt that under the facts in the case at bar every court in Pennsylvania would hold the commitment of an act of bankruptcy, the receipt of the goods by the buyer upon the day on which the petition against him is filed and the appointment of a receiver is made, and the withholding of knowledge of the goods from such receiver and of information, such as invoice, or otherwise, of the shipment, would be such additional facts as would take the case out of the rule of Smith v. Smith. So that in the opinion of the court it is immaterial whether the contract was one to be construed according to the law of Ohio or one to be construed according to the law of Pennsylvania.

As bearing on the question of intent, it is proper to refer to the fact that the letter ordering the merchandise from the claimants was not signed by the bankrupt, but by his clerk. This circumstance does not change the case, for under the testimony the clerk was acting under a general authorization to buy goods. He was general manager of the business while the bankrupt was away from the business. He must have had knowledge of the financial condition of the business, and he and the bankrupt must have known of the large purchases within four or five months of the filing of the involuntary petition, and of the fact that so few of the goods remained.

The exceptions to the report of the special master must be sustained, and the merchandise delivered to the claimants. Let an order be drawn in conformity with this opinion.