In re WATMOUGH.

(District Court, N. D. Ohio, E. D.   October 3, 1913.)

No. 4667.

1. BANKRUPTCY (§ 140*)—SALES TO BANKRUPT—FRAUD—RECOVERY OF PROPERTY.

Where claimant was induced to sell certain goods to the bankrupt by reason of his fraudulent concealment of his financial condition, and, almost immediately after the goods were delivered, buyer was declared bankrupt, the claimant was entitled to disavow the contract and recover the property on discovering the fraud, provided it acted within a reasonable time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—FRAUDULENT SALES—RECOVERY OF PROPERTY OR PROCEEDS.

Where goods have been sold to the bankrupt by reason of fraudulent concealment of his financial condition, the seller may recover the particular

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property, if it can be found, or, if it has been sold, may recover the proceeds, if known, and not lost or so intermingled with other funds as to be indistinguishable either in kind or amount.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

3. BANKRUPTCY (§ 298*)—SALES OF PROPERTY—FRAUD—RESCISSION—WAIVER.
    On December 4, 1912, the bankrupt purchased from claimant a bill of fixtures which were shipped to him and received by the bankrupt on the 9th following. On the same day a petition in bankruptcy was filed, and on the 11th a receiver was appointed, who used the materials in completion of certain contracts held by the bankrupt. The seller received notice of bankruptcy proceedings on December 10th or 12th, but did nothing until January 13, 1913, when it wrote the trustee making claim for the goods. No intervening petition, however, was filed claiming the goods or proceeds thereof until May 24, 1913. *Held*, that claimant's right to rescind and to recover the goods or the proceeds was lost by delay.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 430–443; Dec. Dig. § 298.*]

In Bankruptcy. In the matter of bankruptcy proceedings of William Watmough. On claim of the Sterling Sanitary Manufacturing Company for payment in full of a bill of goods alleged to have been purchased by the bankrupt by fraudulent representations as to his credit. Finding of special master in favor of claimant reversed.

Washington Hyde, of Warren, Ohio, for the bankrupt.
Charles Fillius, of Warren, Ohio, for trustee in bankruptcy.
Warren Thomas, of Warren, Ohio, for petitioning creditor.

DAY, District Judge. The bankrupt, William Watmough, was doing a plumbing business in the city of Warren, Ohio. On the 9th day of December, 1912, he filed his petition in bankruptcy. On December 4, 1912, he purchased from the Sterling Sanitary Manufacturing Company, through a traveling salesman, a bill of goods for which he agreed to pay $150. On December 6th the sanitary company shipped these goods to the bankrupt's place of business, and they were received there on December 9th. The goods were sold to Watmough, f. o. b. Pittsburg. On the 11th day of December, a receiver was appointed to carry on the business of the bankrupt, pending the election of a trustee, and on the same date the receiver was also authorized to complete a number of contracts for plumbing in various residences in Warren, including the furnishing of materials and labor in the completion of these contracts.

The sanitary company received notice of the filing of the petition in bankruptcy on the 10th or 12th of December. Nothing was done by the Sterling Sanitary Manufacturing Company to recover the property itself, either from Watmough or the trustee, but on January 13th, more than a month after the knowledge of the bankruptcy reached the sanitary company, the sanitary company wrote a letter in substance as follows:

"We hereby notify you that we make claim to 12 low down siphonic water closets delivered to William Watmough, Warren, Ohio, on the date he went into bankruptcy, December 9, 1912, amounting to $150."

This letter was received by the trustee elected in the interim. At the time of the receipt of this letter, the trustee did not know the particular property; he did not keep an account of its sale, and did not know then, and did not know at the time of the hearing before the special master, what he received for it. Nothing further was done by the Sterling Sanitary Manufacturing Company until it filed its petition with the referee in bankruptcy, claiming in substance that on the 4th day of December it entered into an agreement to sell certain goods, describing them, to Watmough, for which he (Watmough) agreed to pay the sum of $150; that on December 6th it shipped the goods to Watmough, at Warren, Ohio; that at the time he purchased the goods he was bankrupt and unable to pay for them, and had no expectation of paying therefor, nor did he intend to pay therefor; that the goods were ordered for the purpose of defrauding the plaintiff, or the intervener; that on December 9th Watmough was adjudged a bankrupt; that on the same day the goods were delivered from the freight station, at Warren, to the bankrupt's place of business, and placed among his stock in trade, and the same was thereafter taken possession of by the trustee in bankruptcy and sold, and that by reason of such sale he was unable to get possession of the goods and is now unable to get possession of the same; that, by reason thereof, the petitioner prays that he may be adjudged to have a valid claim against the trustee for the contract price of $150. This intervening petition was filed with the referee in bankruptcy on the 24th day of May, 1913. Nothing was done by the manufacturing company, except to send the letter referred to and to file this petition.

[1] The trustee in bankruptcy contends that the manufacturing company is entitled only to share in the assets of the bankrupt the same as the other general creditors. The intervening petitioner claims that he has the right to this $150 to be paid to him, by reason of the well-settled doctrine that, where property has been obtained from one by fraudulent representations and fraudulent practices, the vendor, upon discovering the fraud, may disavow the contract and recover the property. This doctrine is well established and well recognized in the bankruptcy courts.

It is plain from the record that the vendor was induced to sell his property by reason of the fraud of the vendee in concealing his financial condition. Talcott v. Henderson, 31 Ohio St. 162, 27 Am. Rep. 501; Wilmot v. Lyon, 49 Ohio St. 296, 34 N. E. 720.

When the sanitary company parted with the possession of its goods, by reason of the fraudulent inducement of the bankrupt, it was entitled to disaffirm the sale and recover such property from the vendee's trustee in bankruptcy. Loveland on Bankruptcy, § 407; In re Spann, 183 Fed. 819; Halsey v. Diamond Distilleries Company, 191 Fed. 498, 112 C. C. A. 142.

It was the legal duty of the vendor to rescind the contract within a reasonable time (that is, before the lapse of a time after the true state of things is known), so long that under the circumstances of the particular case the other party may fairly infer that the right of rescission is waived. Pollock's Principles of Contracts, 515; Ward v. Sher-

man, 192 U. S. 168, 176, 24 Sup. Ct. 227, 48 L. Ed. 391; Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798; McLean v. Clapp, 141 U. S. 429, 432, 12 Sup. Ct. 29, 35 L. Ed. 804.

[2] The vendor had the undoubted right, on learning of the fraud practiced upon him, to rescind the contract of sale, to recover the particular property, if it could be found, or, if it had been sold, to recover the proceeds, if known, and not lost and so intermingled with other funds as to be indistinguishable either in kind or amount.

[3] Outside of the letter written to the trustee a month after the bankruptcy was discovered, the vendor did nothing to pursue the identical property, or to recover the proceeds arising from its sale, until the intervening petition was filed in May, 1913.

A proper administration in estates in bankruptcy requires that all parties shall be treated fairly. There was plainly no wrong on the part of the trustee who stands as the representative of all the creditors. The particular goods were never pointed out to him, nor were they asked to be separated from the other goods in his possession. If the special master is sustained in his findings, the intervening petitioner would recover the entire amount of the purchase price of these goods, and this amount would be paid out of the general assets of this bankruptcy case.

The evils growing out of these reclamation proceedings are quite hard to overcome. A claiming creditor should be required in the first instance to be diligent in the pursuit of his remedy, where he desires to rescind the contract of sale and recover the property passing under this contract.

Under all the facts and circumstances of the case, I am of the opinion that the intervener lost his right to rescind this contract by reason of his delay in proceeding.

The finding of the special master that this should be paid in full is reversed, and the intervening petitioner may file his claim as a general creditor. An order may be drawn accordingly.